UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DERRICK RICK**                                                    **CIVIL ACTION**

**versus**                                                          **NO. 12-2617**

**N. BURL CAIN, WARDEN**                                            **SECTION: "I" (3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Derrick Rick, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On January 31, 2006, he was convicted of two counts of first degree murder under Louisiana law.[1] On May 4, 2006, he was sentenced on each count to a consecutive term of life imprisonment without benefit of parole, probation, or suspension of

---

[1] State Rec., Vol. VIII of XIII, trial transcript, p. 1530; State Rec., Vol. I of XIII, jury verdict form.

sentence.[2] On February 8, 2008, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[3] The Louisiana Supreme Court then denied his related writ application on October 3, 2008.[4]

On or after February 27, 2009, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied on May 27, 2009, and June 22, 2009;[6] however, the Louisiana First Circuit Court of Appeal vacated those rulings and remanded the matter for reconsideration.[7] The district court then again denied relief on July 15, 2010.[8] Petitioner's related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on January 14, 2011,[9] and June 7, 2011,[10] and by the Louisiana Supreme Court on August 22, 2012.[11]

---

[2] State Rec., Vol. IX of XIII, transcript of March 4, 2006.

[3] State v. Rick, No. 2007 LA 1524, 2008 WL 426288 (La. App. 1st Cir. Feb. 8, 2008); State Rec., Vol. XI of XIII.

[4] State v. Rick, 992 So.2d 1009 (La. 2008) (No. 2008-KO-0569); State Rec., Vol. XI of XIII.

[5] State Rec., Vol. XI of XIII.

[6] State Rec., Vol. XI of XIII.

[7] State v. Rick, No. 2009 KW 1153 (La. App. 1st Cir. Aug. 31, 2009); State Rec., Vol. XI of XIII.

[8] State Rec., Vol. XI of XIII, Order dated July 15, 2010.

[9] State v. Rick, No. 2010 KW 1911 (La. App. 1st Cir. Jan. 14, 2011); State Rec., Vol. XI of XIII.

[10] State v. Rick, No. 2011 KW 0383 (La. App. 1st Cir. June 7, 2011); State Rec., Vol. XI of XIII.

[11] State *ex rel.* Rick v. State, 95 So.3d 1063 (La. 2012) (No. 2011-KH-1414); State Rec., Vol. XI of XIII.

In September of 2012, petitioner filed a motion for leave to amend and supplement his post-conviction application with the state district court.[12] That motion was denied on October 3, 2012.[13] Petitioner's related writ applications were then also denied by the Louisiana First Circuit Court of Appeal on December 17, 2012,[14] and by the Louisiana Supreme Court on June 21, 2013.[15]

In the interim, on October 23, 2012, petitioner filed the instant federal *habeas corpus* application.[16] The state concedes that the application was timely filed.[17]

### I.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> During the early morning hours of April 13, 2001, Judy Nance discovered the bodies of victims Korie Newman (Nance's daughter) and Alonzo McCrory, Jr. just outside of McCrory's residence located on McCrory Lane in Ponchatoula, Louisiana. Both

---

[12] State Rec., Vol. XI of XIII.

[13] State Rec., Vol. XI of XIII.

[14] State v. Rick, No. 2012 KW 1797 (La. App. 1st Cir. Dec. 17, 2012); State Rec., Vol. XI of XIII.

[15] State *ex rel.* Rick v. State, No. 2013-KH-0090, 2013 WL 3745908 (La. June 21, 2013).

[16] Rec. Doc. 3.

[17] Rec. Doc. 14, p. 4.  The state contends that several of petitioner's claims are unexhausted, Rec. Doc. 14, p. 5; petitioner disputes that contention, Rec. Doc. 17.  Fortunately, a federal court may pretermit a decision on exhaustion where, as here, a petitioner's *habeas* claims have no merit and may be dismissed on that basis. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  In the interest of judicial economy, the undersigned recommends that the Court proceed in that manner.

>victims died as a result of gunshot wounds to the head. The defendant, Newman's former boyfriend and the father of her child, became a suspect in the matter. The defendant was questioned at approximately 4:00 a.m. on April 13, 2001. According to the statement given to the police by the defendant, prior to the murders, the defendant observed Newman and McCrory's vehicles parked outside of McCrory's residence. The defendant looked through the windows of the residence and observed Newman and McCrory having sexual relations. The defendant walked to his cousin's nearby residence and retrieved a gun. The defendant walked back to McCrory's residence and waited for the victims to exit the residence. After the victims exited the residence, the defendant shot Newman first, and she immediately fell to the ground. As McCrory began to flee toward the front door of the residence, the defendant shot him. The defendant approached McCrory's fallen body and saw that he was still moving. The defendant shot him again. The defendant discarded the weapon in a nearby alligator pond.[18]

The Court of Appeal also noted:

>Nance testified that her daughter (victim Korie Newman) began a relationship with the defendant in 1999. In August of 2000, Newman and the defendant had a child. According to Nance's testimony, the defendant was controlling during the relationship. Newman and the defendant lived together for approximately eight months. Around February of 2001, Newman left the defendant and began living with her mother. Nance further testified that the defendant broke into her home on two separate occasions and took the child without notice. On the second occasion, the child had bruises upon his return. Prior to her death, Newman sought, but had not yet received, a restraining order against the defendant.
>On the night before the murders, Nance was expecting Newman to return home from visiting McCrory by 11:30 p.m. When Newman did not return, Nance went to McCrory's residence to look for her. Nance first observed McCrory's body slumped over on the porch of the residence. She then saw her daughter's body lying out in the yard.

---

[18] State v. Rick, No. 2007 LA 1524, 2008 WL 426288, at *1 (La. App. 1st Cir. Feb. 8, 2008); State Rec., Vol. XI of XIII.

According to McCrory's father, McCrory began a relationship with Newman approximately six weeks after Newman left the defendant. Newman and the defendant had previously resided together at a rental home located on McCrory Lane. McCrory's residence was located between 100 and 150 yards from the rental home. The defendant's cousin, Christopher Ratliff, was renting the home at time of the offenses.

The defendant's brother, Charlie Rick III, and his girlfriend, Carla Strunk, described the relationship between the defendant and Newman as "off and on." According to Strunk, the defendant had previously threatened to hurt Newman. The defendant's brother also stated that the defendant and Newman had ended the relationship at least one month prior to the murders. When questioned regarding an automobile accident that the defendant had been involved in on April 11, 2001, he confirmed that the defendant had been taken to the hospital and discharged with a laceration on one of his hands.

The defendant's cousin, Ratliff, and several others resided in the rental home on McCrory Lane (including state witnesses Dallas Chaisson, Amanda Childress, Brandon Gendron, and Christie Smith). Smith responded affirmatively when asked during cross-examination if the defendant had been prescribed hydrocodone and lortab for injuries to his hand received in the car accident that he was involved in on April 11, 2001. On April 12, 2001, near 11:00 p.m., the residents of the rental home got dressed to go out for the night. The defendant was with them at the time. The defendant asked to be dropped off at the end of McCrory Lane, near the Weinberger intersection. Smith gave the defendant the house key, and they left after dropping him off.

Within an hour, the defendant contacted Smith and asked her to come pick him up, stating that he did not feel well. The defendant also told Smith that he thought he had taken too many "yellow jackets," otherwise referred to as energy pills. When Smith and others went back to pick up the defendant, he was asleep. Ratliff shook the defendant to awaken him, and the defendant jumped up in fear. The defendant told Smith to place her hand on his chest to feel the rate of his heartbeat. Smith noted that the defendant's heart was beating fast. After the defendant stated that he was okay, the defendant and group left and loitered at a K-Mart parking lot before returning to McCrory Lane. The defendant seemed fine and acted normally. When they arrived back at McCrory Lane, the police, ambulances, and others were there. At that point, the defendant told

- 5 -

the group, "I've been with y'all tonight no matter what." Smith responded, "Okay."

Detective Gary Baham of the Tangipahoa Parish Sheriff's Office and Jerry McDowell (a former investigator with the Tangipahoa Parish Sheriff's Office) questioned the defendant. Detective Baham began questioning the defendant at 4:00 a.m. on April 13, 2001, and Mr. McDowell spoke to the defendant at approximately 7:00 a.m. Both officers indicated that the defendant appeared sober and was lucid. The defendant did not testify during the trial.[19]

### III.  Petitioner's Claims[20]

#### A.  Falsified Arrest Warrant/Lack of Probable Cause

Petitioner's first and fourth claims challenge the validity of his arrest. The Court will address those two claims together.

As his first claim, petitioner asserts: "My conviction was obtained in violation of the Constitution of the United States or the State of Louisiana:  when a falsified arrest affidavit/warrant

---

[19] Rick, 2008 WL 426288, at *2-3; State Rec., Vol. XI of XIII.

[20] The claims herein were asserted by petitioner in the state post-conviction proceedings. Although the claims were denied by the state courts, the undersigned cannot discern from the state court rulings whether the claims were denied on procedural grounds or on the merits. If the former is the case, some or all of the claims may be procedurally barred; if the latter is the case and the claims are not barred, the deferential standards of review set forth in 28 U.S.C. § 2254(d) may be applicable. However, because of the lack of clarity in the state court rulings, and because the claims have no merit even if reviewed *de novo*, the undersigned recommends that, out of an abundance of caution, such review be afforded and the claims simply be denied as meritless. See Laws v. Stephens, No. 11-20796, 2013 WL 3654551, at *2 (5th Cir. July 16, 2013) ("A state procedural default ... does not always preclude our review. We may reach the merits of potentially defaulted claims – and even apply *de novo* review – when doing so would result in the denial of habeas relief."); see also Berghuis v. Thompkins, 130 S.Ct. 2250, 2265 (2010) ("Courts can ... deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).").

was submitted before the Court."[21]  In explaining that claim, petitioner states:  "Sgt. Gary Baham and Det. Jerry McDowell were the officers working this particular case.  April 13, 2001 Sgt. Gary Baham signed the affidavit for the warrant as a Deputy Clerk of Court swearing his partner in and acting as a Court official in order to secure said warrant."[22]

As his fourth claim, petitioner asserts:  "My conviction was obtained in violation of the Constitution of the United States or the State of Louisiana:  when Petitioner's arrest was made without probable cause."[23]  In explaining that claim, petitioner states:  "I was arrest [sic] on the fact that I was the ex-boyfriend of the female victim, the fact that we had a child together, & there was a past speculated Domestic Abuse charge between myself and female victim."[24]

Because those two claims are premised on purported Fourth Amendment violations, this Court is barred from reviewing them by Stone v. Powell, 428 U.S. 465 (1976).[25]  In Stone, the United States Supreme Court held:  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced

---

[21] Rec. Doc. 3, p. 5.

[22] Rec. Doc. 3, p. 5.

[23] Rec. Doc. 3, p. 10.

[24] Rec. Doc. 3, p. 10.

[25] The state does not expressly raise the Stone bar.  Nevertheless, the United States Fifth Circuit Court of Appeals has held that the Stone bar may be raised by the Court.  Davis v. Blackburn, 803 F.2d 1371, 1372-73 (5th Cir. 1986); Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *6 n.19 (E.D. La. Dec. 23, 2009).  The undersigned, through this Report and Recommendation, hereby places petitioner on notice that the Stone bar is being invoked *sua sponte*.

at trial." Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). Interpreting Stone, the United States Fifth Circuit Court of Appeals has held:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the *processes* whereby a defendant *can* obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim *whether or not the defendant employs those processes.*

Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978) (emphasis added). "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," the Stone bar applies. Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980); Christian v. McKaskle, 731 F.2d 1196, 1199 (5th Cir. 1984).

Petitioner neither alleges nor demonstrates that Louisiana fails to provide such processes or routinely or systematically precludes litigation of claims such as the ones he now raises, and it is beyond cavil that Louisiana courts in fact provide criminal defendants the opportunity to raise Fourth Amendment claims. Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007). As a result, it is clear that Stone now prohibits petitioner from asserting these two Fourth Amendment claims in this federal proceeding.

### B. Improper Testimony

As his second claim, petitioner asserts: "My conviction was obtained in violation of the Constitution of the United States or the State of Louisiana: when a state witness was allowed to voice his personal opinion in front of the jury during testimony."[26] In explaining that claim,

---

[26] Rec. Doc. 3, p. 7.

- 8 -

petitioner states: "The father of the male victim (Alonzo McCrory) during trial testimony stated the night his son was killed he knew for sure it was me (Derrick Rick) who did it. Later stated I was lucky the Police found me first."[27] The trial transcript reflects that, although Alonzo McCrory was not asked for his opinion on the issue, he did in fact state on direct examination that "I knew Derrick had had my dad's pistol from Willie, and I knew it was him that did it."[28]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state law with respect to this claim, his claim is not reviewable in this federal proceeding.

Moreover, to the extent that petitioner is arguing that the testimony violated federal law, he has failed to demonstrate that he is entitled to *habeas* relief on that basis. The improper admission of evidence does not necessarily warrant federal *habeas corpus* relief. Rather, the United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

---

[27] Rec. Doc. 3, p. 7.

[28] State Rec., Vol. VII of XIII, trial transcript, p. 1130.

<u>Neal v. Cain</u>, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); <u>see also</u> <u>Little</u>, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

As an initial matter, the Court notes that petitioner has not shown that the admission of McCrory's statement was necessarily improper. It is true that, under Louisiana law, *expert* witnesses are not allowed to express an opinion as to the guilt or innocence of the accused. La. Code Evid. art. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused."). However, McCrory was testifying as a *lay* witness, and that evidentiary prohibition is therefore inapplicable. <u>State v. Pierre</u>, No. 2009 KA 0454, 2009 WL 3162246, at *9 (La. App. 1st Cir. Sept. 11, 2009); <u>State v. Hubbard</u>, 708 So.2d 1099, 1106 (La. App. 5th Cir. 1998).

Moreover, even if the testimony was improper, McCrory's comment concerning his pesaonal opinion simply cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction. On the contrary, this Court has no hesitation in concluding that petitioner's conviction stemmed from the other significantly more damning evidence, including but not limited to his own *confession*, not from this passing statement of opinion made by a grieving father.

### C.  Ineffective Assistance of Counsel

In a related claim, petitioner next asserts: "My conviction was obtained in violation of the Constitution of the United States or the State of Louisiana: when trial attorney failed to object

- 10 -

to a state witness when he voiced his personal opinion in front of the jury during testimony."[29]  In explaining that claim, petitioner states:  "My attorneys Chuck Reid and Reginald McIntire did not object to the state's witness testimony."[30]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at

---

[29] Rec. Doc. 3, p. 8.

[30] Rec. Doc. 3, p. 8.

689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

For the following reasons, the Court finds petitioner's ineffective assistance of counsel claim has no merit.

First, again, it does not appear that McCrory's comment concerning his personal opinion ran afoul of La. Code Evid. art. 704 or any other provision of state or federal law. If not, any objection would have had no merit, and it is clear that counsel does not perform deficiently by failing to make meritless objections. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless

argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Second, *even if* testimony had been improper, federal law holds that a decision of counsel to forgo a particular objection is generally one of trial strategy, and, as such, is normally insufficient to support an ineffective assistance claim. See, e.g., Wolfe v. Cain, Civ. Action No. 11-2906, 2012 WL 6839718, at *9 (E.D. La. May 14, 2012), adopted, 2013 WL 139871 (E.D. La. Jan. 10, 2013); Rios-Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance.  In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.").  Federal *habeas* courts are not to second-guess counsel's strategic decisions through the distorting lens of hindsight but instead are to employ a strong presumption that the conduct falls within a wide range of reasonable assistance.  Strickland, 466 U.S. at 689; see also Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993).

Such deference is particularly appropriate here, in that McCrory's passing comment concerning his personal opinion as to petitioner's guilt was of little, if any, importance.  As previously noted, it can hardly be doubted that petitioner's conviction stemmed from the other significantly more damning evidence, including but not limited to his own confession, rather than from McCrory's comment.  Accordingly, there simply is no reasonable probability that the result of the proceeding would have been different if defense counsel had objected to the comment, and therefore petitioner cannot show the prejudice required to prevail on his ineffective assistance of counsel claim.

### D.  Fifth Amendment

As his fifth claim, petitioner asserts:  "My conviction was obtained in violation of the Constitution of the United States or the State of Louisiana:  whether incriminating statements were obtained under such circumstances during custodial interrogation as to impose upon Derrick Rick's Fifth Amendment Rights and safeguards."[31]  In explaining that claim, petitioner states:

> April 13, 2001 I was brought to Tangipahoa Parish Sheriff's Department for questioning.  Upon meeting Det. Gary Baham and being informed of the nature of the crime I was being questioned for I asked for an attorney.  I was asked to sign a waiver of rights form and I refused.  Det. Gary Baham continued with questioning.  At 6:45 am I requested an attorney for the 2nd time, again I was denied.  Around 7:00 am Det. Jerry McDowell came in and began questioning me even more.  I expressed to both officers that I was in a car wreck the day before, that I was hurting, needed my medication, and wasn't feeling well.  All was ignored.  Det. Gary Baham wrote/type his report the next day (his statement as to the interrogation) nearly 36 hrs. later, from his memory and some notes.[32]

The United States Supreme Court has held:

> [A]lthough we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.  We further hold that an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

---

[31] Rec. Doc. 3, p. 12.

[32] Rec. Doc. 3, p. 12.

Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) (citation and footnote omitted).

Accordingly, if petitioner had proven that the officers continued to interrogate him after he invoked his right to counsel, that would establish a constitutional violation. However, that simply has never been proven. On the contrary, at the suppression hearing held on January 7, 2003, Sergeant Gary Baham testified that he advised petitioner of his rights,[33] and then, after several hours of questioning, petitioner first stated that he wanted to talk to an attorney when Baham asked if petitioner was willing to give a recorded statement. Baham stated that he then ceased questioning petitioner at that point.[34] At that same hearing, Detective Jerry McDowell likewise testified that his interrogation of petitioner concluded before the right to counsel was invoked.[35] Petitioner did not testify at the suppression hearing, and no proof of a violation was proferred. The trial court therefore denied the motion to suppress,[36] and the related writ applications challenging that ruling were denied by both the Louisiana First Circuit Court of Appeal[37] and Louisiana Supreme Court.[38] Another motion to suppress was subsequently filed and, at a hearing at which no additional testimony was

---

[33] See, e.g., State Rec., Vol. II of XIII, transcript of January 7, 2003, pp. 5-7. An advisement of rights form signed by petitioner also appears in the record. State Rec., Vol. X of XIII.

[34] State Rec., Vol. II of XIII, transcript of January 7, 2003, pp. 8-9.

[35] State Rec., Vol. II of XIII, transcript of January 7, 2003, pp. 51-52.

[36] State Rec., Vol. II of XIII, transcript of January 7, 2003, p. 57.

[37] State v. Rick, No. 2003 KW 0434 (La. App. 1st Cir. Apr. 22, 2003); State Rec., Vol. X of XIII.

[38] State v. Rick, 853 So.2d 645 (La. 2003) (No. 2003-KK-1384); State Rec., Vol. X of XIII.

taken, that motion was likewise denied on January 11, 2006.[39]  The related writ applications challenging that ruling were then also denied by both the Louisiana First Circuit Court of Appeal[40] and Louisiana Supreme Court.[41]

In summary, the record reflects, and petitioner does not dispute, that he was advised of his right to counsel.  Rather, his claim is that, *after* being advised of his rights, he invoked his right to counsel and, despite that fact, the officers continued to interrogate him in violation of the Fifth Amendment.  However, the testimony at the suppression hearing showed otherwise, and petitioner has never offered any evidence whatsoever in support of his barebones allegation that the officers continued to interrogate him after he invoked his right to counsel.  In the absence of any such evidence, his claim necessarily fails.  See Jones v. Dugger, 928 F.2d 1020, 1026 (11th Cir. 1991).

### E.  Defective Indictment

As his sixth claim, petitioner asserts:  "My conviction was obtained in violation of the Constitution of the United States or the State of Louisiana: when Petitioner's indictment against him was in violation in that the indictment does not include/fails to supply the nature and cause of the accusation against him."[42]

The sufficiency of a state indictment is not a matter for federal *habeas* relief unless it can be shown that the instrument is so defective that it deprived the state court of jurisdiction.

---

[39] State Rec., Vol. III of XIII, transcript of January 11, 2006.

[40] State v. Rick, No. 2006 KW 0075 (La. App. 1st Cir. Jan. 19, 2006); State Rec., Vol. I of XIII.

[41] State v. Rick, 919 So.2d 726 (La. 2006) (No. 2006-KK-0159); State Rec., Vol. I of XIII.

[42] Rec. Doc. 3, p. 13.

McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994). The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made *only* by looking to the law of the state." Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in original).

Regarding the form of an indictment for first degree murder, Louisiana law expressly provides: "The following forms of charging offenses may be used, but any other forms authorized by this title may also be used: ... First Degree Murder – A.B. committed first degree murder of C.D." La. Code Crim. P. art. 465(A)(31).

The indictment in the instant provided:

> The Grand Jury of Tangipahoa Parish, Louisiana,
> Presents That
>
> 1) DERRICK K RICK ...
>
> In the Parish of Tangipahoa, State of Louisiana, on
>
> April 13, 2001, DERRICK K RICK did violate:
> COUNT 1
> R.S. 14:30 FIRST DEGREE MURDER, in that he did commit first
> degree murder of Alonzo McCrory, Jr.
>
> April 13, 2001, DERRICK K RICK did violate:
> COUNT 2
> R.S. 14:30 FIRST DEGREE MURDER, in that he did commit first
> degree murder of Korie Newman.[43]

---

[43] State Rec., Vol. I of XIII, Indictment.

Because the indictment in the instant case mirrored the form specifically authorized by state law, it obviously complied with and was valid under state law. Therefore, there is no basis for relief under federal law, and this claim should be rejected.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Derrick Rick** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[44]

New Orleans, Louisiana, this fifth day of November, 2013.

*Daniel E. Knowles, III*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.